UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARELY ALEJANDRA FERNÁNDEZ LÓPEZ,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01226-KES-SKO (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 6 |

Petitioner Arely Alejandra Fernández López is a 41-year-old asylum-seeker from Chile who entered the United States in August 2021. After entry, she was detained by immigration officials but was released on September 1, 2021 after the officials determined that she was neither a danger nor a flight risk. Over the course of nearly four years, she sought relief in her immigration case, appeared at all hearings and check-ins, and maintained a clean criminal record. On August 22, 2025, when she appeared for a credible fear interview before an asylum officer, Immigration and Customs Enforcement ("ICE") agents re-detained her.

On September 17, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 2, and a motion for a temporary restraining order, Doc. 6, arguing that her re-detention violates the Due

1

1  Process Clause of the Fifth Amendment.  She seeks her immediate release from detention and an

2  injunction prohibiting the government from re-detaining her unless it first provides her with a

3  hearing before a neutral adjudicator.  *Id.* at 16.  Respondents filed an opposition on September 29,

4  2025, Doc. 11, and petitioner filed a reply on October 6, 2025, Doc. 12.[1]

5  The Court held a hearing on October 17, 2025.  At the hearing, the Court raised with the

6  parties whether petitioner's motion should be converted into a motion for preliminary injunction

7  because the standard is the same and respondents had notice and opportunity to respond through a

8  written opposition and through oral argument at the hearing.  *See* Doc. 11.  The parties agreed

9  that the motion should be converted to one for a preliminary injunction.  As the parties agree that

10  the motion is ripe for conversion and do not believe that additional briefing is needed, petitioner's

11  motion is converted to a motion for preliminary injunction.  For the reasons set forth below,

12  petitioner's motion for a preliminary injunction is granted.

13  **I.   Background**[2]

14  Petitioner indicates that she fled Chile because she was physically abused by her two

15  partners and law enforcement did not intervene.  *See* Doc. 9, Pedraza Decl. at ¶ 2; Doc. 12-1,

16  Lopez Decl. at ¶¶ 1–3.  On August 7, 2021, she crossed the southern border and was detained by

17  U.S. immigration officials.  Doc. 1 at ¶ 3; Doc. 11-1, Martinez Decl. at ¶ 5.  Immigration officials

18  initiated expedited removal proceedings under 8 U.S.C. § 1225(b)(1).  Doc. 1 at ¶ 3.  However,

19  after she had been detained for three weeks, the immigration officials decided to release her.

20  Docs. 14, 15.  On September 1, 2021, immigration officials provided her with a Notice of

21  Custody Determination which stated that she was being released on conditions "[p]ursuant to the

---

[1] In their opposition, respondents request that the Court "strike and [] dismiss all unlawfully named officials under § 2241."  Doc. 11 at 1, n.1.  Such a "request for court order must be made by motion." *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025).  "[A] request for affirmative relief is not proper when raised for the first time in an opposition." *Id.*  As such, respondents' request is denied without prejudice.

[2] Some of the facts articulated in this section come from petitioner's verified petition.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)).

2

authority contained in section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] . . . pending a final administrative decision in [her] case" because she had a chronic care condition that placed her at heightened risk of severe illness or death if she contracted COVID-19.  Doc. 14. Confusingly, they also provided her with an Interim Notice Authorizing Parole which stated that she was being paroled pursuant to 8 U.S.C. § 1182(d)(5)(A).  Doc. 15 at 1.

By regulation, immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding."  8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)).  And the regulations that authorize immigration authorities to release a noncitizen pursuant to 8 U.S.C. § 1226(a) require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8). Therefore, release under either provision "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following her release, petitioner built a life in the United States over the course of nearly four years.  Doc. 2 at ¶ 4.  She leased an apartment with her new partner, sent money to support her family and her partner's family, paid taxes, and sought relief in her removal proceedings. Doc. 2 at ¶¶ 4, 34; Doc. 9, Pedraza Decl. at ¶¶ 4, 15.  She also complied with her release conditions.  Doc. 2 at ¶ 36.  She attended all check-ins, notified ICE of all address changes, and maintained a clean criminal record.  *Id.* ¶¶ 31, 36; Doc. 9, Pedraza Decl. at ¶ 15.

Immigration authorities scheduled a credible fear interview for petitioner on August 22, 2025.  Doc. 2 at ¶ 5.  At the interview, an asylum officer found that petitioner did not have a credible fear of returning to Chile.  *Id.*; Doc. 11-1, Ex. 2.  ICE agents then arrested her.  Doc. 2 at ¶ 5.  ICE detained her at the ICE office in San Francisco for one day, then transported her to Mesa Verde ICE Processing Center.  *Id.* ¶¶ 1, 5; Doc. 9, Pedraza Decl. at ¶ 5.

On August 28, 2025, an immigration judge vacated the negative determination.  Doc. 11-

3

1, Ex. 3. The immigration judge determined that petitioner had "established a *significant possibility* of eligibility for asylum under section 208 of the Immigration and Nationality Act (Act), withholding of removal under section 241(b)(3) of the Act, or withholding of removal under the Convention Against Torture (CAT)." *Id.* (emphasis in original). Following the immigration judge's decision, immigration officials initiated removal proceedings pursuant to 8 U.S.C. § 1229a. Doc. 11-1, Martinez Dec. at ¶ 9; Doc. 11-1, Ex. 1. Petitioner then filed an application for asylum, for which there is not yet a scheduled hearing date. Doc. 11-1, Martinez Dec. at ¶ 10. Sometime thereafter, immigration authorities transferred petitioner to California City Detention Facility. Doc. 12-3, Lopez Decl. at ¶¶ 20, 25.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## III. Discussion

### a. Petitioner is Likely to Succeed on the Merits.

Petitioner argues that the Due Process Clause bars the government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger, noting that

4

civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community. *See* Doc. 2 at 13–23; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Petitioner's Due Process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions."

5

1  *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations
2  omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." *Id.* at
3  481–84.

4      Petitioner's parole from detention is similar. For four years, it allowed her to establish ties
5  in the United States. She met her partner and leased an apartment with him, supported her family
6  and her partner's family abroad, paid taxes, and sought relief in her removal proceedings. The
7  government does not dispute that she complied with all conditions of her release.

8      Respondents argue that petitioner does not have a liberty interest because 8 U.S.C.
9  § 1225(b)(1) applies and mandates that she be detained. Doc. 12 at 9–11. Respondents point out
10 that petitioner was initially detained under § 1225(b)(1) when she arrived in the United States, *see*
11 Doc. 2 at ¶ 3, and argues that she was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), *see* Doc. 15.
12 The government argues that it revoked her parole on August 22, 2025. *See* Doc. 2 at ¶ 5; *see also*
13 *Jennings*, 583 U.S. at 288, 300 (noting that those detained under § 1225(b)(1) or § 1225(b)(2)
14 "may be temporarily released on parole 'for urgent humanitarian reasons or significant public
15 benefit'" pursuant to 8 U.S.C. § 1182(d)(5)(A)), but "[t]hat express exception . . . implies that
16 there are no other circumstances under which aliens detained under § 1225(b) may be released").
17 The government argues that when ICE revoked her parole in August 2025, § 1182(d)(5)(A)
18 required that she "be returned to the custody from which [she] was paroled"—in this case,
19 § 1225(b) custody. *See Jennings v. Rodriguez* , 583 U.S. 281, 288 (2018) (quoting 8 U.S.C.
20 § 1182(d)(5)(A)); 8 C.F.R. § 212.5(e)(2)(i) (explaining that when immigration authorities revoke
21 parole, a noncitizen is "restored to the status that he or she had at the time of parole"). The
22 government argues that, under § 1225(b), petitioner's detention is mandatory. Doc. 11 at 10
23 (citing 8 U.S.C. § 1225(b)(1)(B)(ii)).

24     However, it is not clear that immigration officials released petitioner in 2021 on parole
25 under § 1225(b) as opposed to § 1226. When immigration officials released petitioner on
26 September 1, 2021, they provided her with a Notice of Custody Determination that stated she was
27 being released under § 1226. That Notice stated that "[p]ursuant to the authority contained in
28 Section 236 of the INA," which is 8 U.S.C. § 1226, she was being released "pending a final

6

1 administrative determination in [her] case." Doc. 14.  Release under § 1226(a) and release under
2 § 1182(d)(5)(A) "are distinct procedures." *Espinoza*, 2025 WL 2675785, at *6 (citing *Ortega-*
3 *Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16, 1119–20 (9th Cir. 2007)).  As other courts have
4 found, once immigration authorities "elect to proceed with full removal proceedings under
5 § 1226, [they] cannot [] reverse course and institute § 1225 expedited removal proceedings."
6 *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21,
7 2025).

8 Even if petitioner's immigration proceedings for the past four years had been under
9 § 1225(b) rather than § 1226, respondents' argument that § 1225(b) divests petitioner of any
10 liberty interest for purposes of the Due Process Clause is unpersuasive.  As an initial matter,
11 § 1225(b) detention is not entirely mandatory because immigration officials may release
12 § 1225(b) detainees under § 1182(d)(5)(A) "for urgent humanitarian reasons or significant public
13 benefit," as respondents assert occurred here.  *Jennings*, 583 U.S. at 288, 300 (quoting 8 U.S.C.
14 § 1182(d)(5)(A)); *see also Biden v. Texas*, 597 U.S. 785, 806 (2022).  Under § 1182(d)(5)(A),
15 "[i]f an asylum-seeker establishes her identity and that she presents neither a flight risk nor a
16 danger to the public, her detention 'is *not* in the public interest,' and thus ICE '*should*, absent
17 additional factors . . . parole the alien.'"  *Mons v. McAleenan*, No. 19-1593 (JEB), 2019 WL
18 4225322, at *2 (D.D.C. Sept. 5, 2019) (quoting ICE Directive 11002.1, Parole of Arriving Aliens
19 Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009)).

20 Respondents point out that the statute provides that ICE may re-detain a noncitizen
21 without a hearing.  Doc. 11 at 10; *see* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of parole
22 shall, in the opinion of [immigration authorities], have been served the alien shall forthwith return
23 . . . to [] custody.").  But the fact that § 1225(b) authorizes discretionary revocation of parole
24 does not deprive petitioner of her liberty interest.  In *Morrissey*, the Court noted that the parolees
25 in that case had "no statutory right to remain on parole" and that "Iowa law provides that a
26 parolee may be returned to the institution at any time" at the discretion of a parole board.
27 *Morrissey*, 408 U.S. at 475.  Nevertheless, the Court found that the conditional nature of parole
28 made "[i]mplicit . . . the notion that the parolee is entitled to retain [her] liberty as long as [she]

7

1   substantially abides by the conditions of [her] parole." *Id.* at 479. "The parolee has relied on
2   [that] implicit promise . . . ." *Id.* at 482. The government does not dispute that petitioner
3   complied with the terms of her release.

4   Respondents next argue, citing *Thuraissigiam* and *Landon*, that petitioner has no Due
5   Process rights and that her rights are limited to those provided by statute. Doc. 12 at 11–12
6   (citing *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), and *Landon v. Plasencia*, 459 U.S.
7   21, 32 (1982)). This argument is unpersuasive for two reasons. First, it fails to appreciate the
8   distinction between persons already located inside the United States, like petitioner, and persons
9   attempting to enter the United States, like the petitioners in *Thuraissigiam* and *Landon*. "It is
10  well established that certain constitutional protections available to persons inside the United
11  States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S.
12  678, 693 (2001) (citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 269 (1990); *Johnson v.*
13  *Eisentrager,* 339 U.S. 763, 784 (1950)). "But once an alien enters the country, the legal
14  circumstance changes, for the Due Process Clause applies to all 'persons' within the United
15  States, including aliens, whether their presence here is lawful, unlawful, temporary, or
16  permanent." *Id.*; *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-
17  established that the Due Process Clause stands as a significant constraint on the manner in which
18  the political branches may exercise their plenary authority.").

19  Second, respondents' argument misconstrues the nature of the challenge that petitioner
20  brings in this case, which is a challenge to her detention. *Thuraissigiam* held that a petitioner
21  who was stopped at the border did not have any due process rights *regarding admission into* the
22  United States. *Thuraissigiam*, 591 U.S. at 107; *see also Landon*, 459 U.S. at 32 ("("[A]n alien
23  seeking initial admission to the United States requests a privilege and has no constitutional rights
24  regarding his application . . . ."). However, petitioner challenges her re-detention without a
25  hearing; she does not challenge in this habeas action any determination regarding her
26  admissibility. *See Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing
27  *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to
28  detention); *Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to [detain] non-citizens

is always constrained by the requirements of due process.").

"Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at 990 n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The Due Process Clause protects petitioner, a person inside the United States, from unlawful detention. *See Zadvydas*, 533 U.S. at 693.

The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[3]

---

[3] Respondents note that the Supreme Court has never utilized the *Mathews* factors in evaluating a Due Process claim by a noncitizen, Doc. 11 at 7 (citing *Rodriguez Diaz v. Garland*, 53 F.4th

9

1    Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Respondents do not dispute that petitioner has no criminal history and has attended every check-in since she arrived in the United States. *See* Doc. 2 at ¶¶ 10, 28–32. Given the absence of any procedural safeguards to determine if her re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an *overwhelming interest* in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in

---

1189, 1206 (9th Cir. 2022)), but respondents analyze the *Mathews* factors without proposing an alternative test. Courts in this circuit regularly employ the *Mathews* factors to evaluate the Due Process argument that petitioner makes here. *See e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). The Court does not see a reason to depart from this practice. As the Ninth Circuit has noted, "*Mathews* remains a flexible test" that accounts for the competing interests of an individual detainee and the government. *Rodriguez Diaz*, 53 F.4th at 1206–07.

10

1    revoking parole without some informal procedural guarantees."). In immigration court, custody
2    hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the
3    government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward
4    doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

5    On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which
6    should have been provided before she was detained. "'[T]he root requirement' of the Due
7    Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived
8    of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542
9    (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127
10   ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some
11   kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has
12   held that Due Process requires a pre-deprivation hearing before those released on parole from a
13   criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The
14   same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.
15   Numerous district courts have held that these principles extend to the context of immigration
16   detention. *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at
17   *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-
18   05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at
19   970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2
20   (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4
21   (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4
22   (N.D. Cal. Aug. 23, 2020).

23   With these considerations in mind, petitioner is likely to succeed on the merits of her
24   claim that her re-detention without a hearing violates the Due Process Clause.

25   **b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

26   Turning to the second *Winters* factor, "[i]t is well established that the deprivation of
27   constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994
28   (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged

11

deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a temporary restraining order.[4]

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return her to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10,

---

[4] Respondents cite *Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL 7474861, at *10 (N.D. Cal. Dec. 24, 2018), for the proposition that the harms petitioner faces are "essentially inherent in detention, [and] the Court cannot weigh this strongly in favor of" him. Doc. 12 at 8. *Lopez Reyes* is distinguishable because the court did not find, under the circumstances of that case, that the Due Process Clause required a *new* bond hearing. *Lopez Reyes*, 2018 WL 7474861, at *10 ("[T]he Court finds that the Fifth Amendment does not require this Court to order a new bond hearing.").

2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same). Respondents are ordered to release petitioner immediately. Respondents may not re-detain petitioner unless the government proves by clear and convincing evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community.

## IV.     Conclusion and Order

Accordingly, petitioner's motion for a preliminary injunction, Doc. 2, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

Petitioner may file a brief on the merits within 30 days. Respondents may file an additional brief related to the merits of the petition within 30 days thereafter, and petitioner may file a reply brief within 15 days of respondents' brief. Alternatively, the parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

IT IS SO ORDERED.

Dated:   October 17, 2025

UNITED STATES DISTRICT JUDGE